## THE PONTCHARTRAIN RAILROAD COMPANY *v.* HEIRNE et al.

In an action against the owners for the value of certain services alleged to have been rendered to a steamer, evidence is admissible, under the general issue, to show that, at the time of rendering the services, the steamer was chartered to a third person. The defence set up is not an exception.

The owners of a steamer, chartered to, and in the possession of, a third person, will not be liable for services rendered to the vessel, while so chartered, to the knowledge of the party by whom the services were rendered.

The 9th sec. of the stat. of 20 January, 1830, incorporating the Pontchartrain Railroad

Company, while it grants to that company a privilege on vessels or other property liable for the cost of warehouseing, wharfage and transportation, imposes no personal liability on the owner for services rendered to a steamer while charted to a third person.

Where the business of an incorporated company is of such a nature as to require it to be conducted through servants or agents, notice to one of its officers relative to a matter in which he acted within the scope of his employment and in the usual course of the company's business, will bind the company.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

*Stewart,* for the plaintiffs. The privilege granted to the plaintiffs included a personal action against the owners of the steamer. Civ. Code, arts. 3149, 3150, 3151. Persil, Regime Hyp. ch. 1, sec. 4. 1 Sumner, 75. The defendants could not prove the chartering of the steamer under the plea of the general issue. Code Pract. arts. 327, 331. 8 Mart. 207. 3 Mart. N. S. 667. 5 Ibid. N. S. 39. 2 Ibid. 358. 6 Ibid. 311, 388, 398. 3 La. 350. 6 Ibid. 457, 745. 5 Robinson, 487. 9 Ibid. 263. 3 Black. Com. 305–9. Stephens on Pleading, 75. Kauffman's Mackeldy, vol. 1, sec. 204. Febrero, C. J. lib. 3, ch. 1, § 14, nos. 174, 176. Merlin, Rep. *verbo* Exception, *Orme* v. *Townsend,* 4 Mason, 543. There is no bill of exceptions to the opinion of the judge rejecting the charter-party. It cannot, therefore, be noticed by this court, the defendants not having excepted to the opinion of the court rejecting it. Code Prac. arts. 483, 487, 489, 896, 897, 899, 900. 1 La. 323. 13 Ibid. 95.

*Mott,* for the appellants. General owners are not liable for supplies, repairs, &c., furnished to a ship or vessel while under a charter party. Abbott on Shipping, last Boston ed. p. 41. *Reeve* v. *Davis,* 1 Adolphus & Ellis, 312. 28 Eng. Com. Law Rep. 95. *Baker* v. *Buckle,* 7 J. B. Moore, 349. 17 Eng. Com. Law Rep. 78. 16 East. 173.

The judgment of the court was pronounced by

SLIDELL, J.* This suit is brought for the recovery of certain charges for transportation and labor, for which it is alleged that the defendants are liable *in soltdo,* as owners of the steamer *Monmouth,* at the time of the rendition of the services to that vessel, then employed in carrying passengers and property for hire, on lake Pontchartrain ; and that the obligation of defendants for said freight and labor, was duly contracted by their authorized agent. The defendants pleaded a general denial. At the trial of the cause the defendants offered in evidence a charter party, and also parol evidence to show that, at the time of the rendition of the services by plaintiffs, the boat was chartered to one *Hoffman.* To the admission of this evidence the plaintiffs excepted, upon the ground that the facts thus offered to be proved should have been specially pleaded, and could not be shown under the general issue. The testimony was received, subject to the exception.†

We think the evidence was admissible under the general issue. Such evidence, under such a plea, would be admitted in courts which follow the common law system of practice. See Stephens on Pleading, p. 162. We are not disposed to be more rigorous, except in those cases where we are required to be so by positive provisions of our Code of Practice, or by those rules, as to some particular subjects of defence, which a long course of decisions of the Supreme Court may have recognized. Our Code of Practice gives great latitude to the plea of the general denial. By article 327, it is declared that, "the defendant,

---

* EUSTIS, C. J., did not sit on the trial of this case, having been of counsel in the lower court.

† The introduction of the charter-party having been objected to by the plaintiffs, an entry on the minutes of the court states, " that the court is to decide upon the objections on the final decision of the suit, reserving to either party the right to except." In the reasons for its judgment, the court say : " This piece of evidence is rejected, because the defence was not specially pleaded."

though not bound to answer specially to all the allegations of the plaintiff, except when called upon to avow or to deny his signature, must, nevertheless, if he intend to resist the action by means of some *exception*, plead the same expressly and positively in his answer, in all the cases hereafter prescribed, otherwise he shall not be permitted to avail himself of such exception afterwards." The expression here used, " *exception*," rendered in the French text, "*moyens de defense qu'on appelle exceptions*," has a well ascertained technical meaning. These exceptions are classed by the Code under the heads of dilatory, declinatory and peremptory. It is too plain to need remark that the particular subject matter of defence under consideration cannot be classed under either of the two first heads, nor upon a reasonable construction of the provisions of the Code can it be classed under the head of peremptory exceptions. These last are of two kinds. Those " relating to forms, and which tend to have the cause dismissed owing to some nullities in the proceedings," and " peremptory exceptions founded on law," which, are " those which, without going into the merits of the cause, show that the plaintiff cannot maintain his action, either because it is *prescribed*, or because the cause of action has been *destroyed* or *extinguished*." The defence in the present case obviously cannot be classed under the former description, nor is it comprehended in the latter, because its tendency is to show, not that the action has been prescribed, nor that its cause has been destroyed or extinguished, but that no cause of action against these defendants ever existed.

Our next consideration is the nature and effect of this evidence, upon the question of the alleged liability of the defendants. It is shown that, under the terms of this charter party, and also in the mode of its execution, the defendants parted with the possession and with the entire control and direction of the steamer, all which were held and exercised by *Hoffman* during the period of the rendition of the services for which the plaintiffs seek to make the defendants liable; and there is no proof of any direct promise or undertaking by the defendants to the plaintiffs. Now, in such a case, the well ascertained doctrine in England and in the United States is that, the owners are not liable. The doctrine goes even to parol, as well as written charter parties, and was extended by Lord Denman, in *Reeve* v. *Davis*, 1 Adolphus & Ellis, 312, to a case where the defendants were the registered owners of the vessel, and where the plaintiff, who had supplied goods and labor for the ship on the orders of the captain and charterer, was unacquainted with the contract of charter party. The English and American authorities which are numerous, may be found in the references in Abbott on Shipping, edit. of 1846.

But the learned judge of the Commercial Court, after considering these authorities, was of opinion, that they were not applicable to the present case, by reason of the peculiar provisions of our Civil Code; that for supplies, repairs, &c., our laws give a privilege upon the vessel, and hence, said he, *a fortiori*, a personal action on the property; that the credit is given to the vessel and to the owners of the property thus put afloat; that a charter party is a secret contract, the terms and conditions of which are not known to third persons.

Conceding, for the purpose of argument, that by the special clause of this company's charter, it would stand on as favorable a footing as to privilege as one who had furnished supplies to the steamer, still we cannot concur with the deduction made by the court below from these premises. There is no inconsistency between the existence of a privilege on one's property, and an exemption

Pontchar-
train
Railroad
Company.
*v.*
Heirne.

PONTCHAR-
TRAIN
RAILROAD
COMPANY.
v.
HEIRNE.

from personal liability.  If A lends his horse to B, the keeper of an inn where B puts up, has a privilege on the horse (C. C. art. 3201), but no claim against the lender personally.  .The purchaser of land subject to a mortgage, which he has not assumed, takes it encumbered with that burden, but is not personally answerable.  Moreover, the distinction between the privilege and the indebtedness is amply established by our Code, which abounds in cases showing that the privilege may be extinguished, and yet the indebtedness remain.  Arts. 3213, 2769, &c.  The clause of the charter which the plaintiffs invoke, perhaps gives the same privilege which is accorded to the captain for freight; but his privilege is lost, even against the consignee, in fifteen days, while the personal action lasts for a year.   The company's charter cannot be strained beyond its terms, in derogation of the general commercial law.  It grants a privilege against the vessel, but imposes no personal liability upon her general owner.

· This view of the case might suffice.  But it is proper to add, not only that there was no direct undertaking by the defendants towards the plaintiffs, but that the facts of this case harmonize with the principle upon which the English and American doctrine rests.   The credit really appears to have been given to *Hoffman*, the charterer and employer of the steamer.  The secretary of the company states that he had early information from *Hoffman* of the vessel being chartered ; and *Hoffman*, after the expiration of the charter party and after having ceased to be captain, gave the secretary a due bill for the amount, signed by himself individually.   Bills incurred after the expiration of the charter party were, according to the usual course of the company's business, promptly presented to the defendants' officers, and promptly paid by them, while the previous bill of charges now contested, lay over for many months, without any call upon them.

It is said that the knowledge of the charter party by the secretary of the company, and the conversations in the course of these transactions which passed between him and *Hoffman*, cannot affect the corporation.   This proposition we cannot recognize.   The official capacity of the secretary, who was one of the principal witnesses in the cause, is not disputed, and the matters in which he acted appear to have been within the scope of his employment and in the usual course of the company's business, which was of such a nature as necessarily to be conducted through servants and agents, and impossible to be carried on in its details by the direct action of its board of directors.

It is decreed that the judgment of the court below be reversed, and that there be judgment in favor of the defendants, with costs in both courts.